**Michael Montague, Administrator, Appellee, v. Chicago Consolidated Traction Company, Appellant.**

### Gen. No. 14,580.

1. NEGLIGENCE—*when question of wantonness for jury.* If a motorman sees a trespasser upon a bridge over which his car is about to pass, running to leave the same by the only means open, namely, at the end, and runs his car so closely to such trespasser and at such a speed that he would be unable to stop at any time to prevent injuring such trespasser if he should fall, the question as to whether such conduct was negligence amounting to wantonness is for the jury.

2. EVIDENCE—*when question calls for fact, not conclusion.* The following question: "Was there any place for the deceased to have gotten off that bridge other than at the end," calls not for the conclusion of the witness but for a fact.

Montague v. Chicago Consolidated Traction Co., 150 Ill. App. 288.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed October 7, 1909.

JOHN A. ROSE and FRANK L. KRIETE, for appellant; W. W. GURLEY, of counsel.

BOWLES & BOWLES, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment for $5,000, recovered against it by the administrator of Walter Hardt, deceased, for wrongful death. Defendant operates in Madison street an electric street railway. At the Desplaines river the track of the defendant curves to the north and crosses that river on a trestle bridge, which is five feet north of a wagon bridge, used also by pedestrians, which is on a line with Madison street east of the river. The railroad bridge is the private property of the defendant. On the west side of the river the west end of the railroad bridge is directly north of the west end of the wagon bridge, but on the east side of the river the railroad bridge extends twelve feet farther east than the wagon bridge and is 142 feet long, and the wagon bridge 130 feet long. The railroad bridge is a single track bridge, without railings, and is about twenty-five feet above the river. The rails are laid on ties placed ten inches apart. The deceased, then thirteen years of age, and another boy, were crossing the railroad bridge from east to west. When they were about half way across the bridge a west-bound car of defendant reached the east end of the bridge. The boys started to run, and the car followed them. The other boy reached the west end of the bridge and jumped to the ground, or to a pier, but when the deceased was within a few feet of the west end of the bridge he fell and the car ran against him as he was lying on the track, and

so injured him that he died. The motorman on defendant's car testified that he first saw deceased when the car was at the east end of the railroad bridge; that deceased was then about the middle of the bridge; that when he fell he was five or six feet from the west end of the bridge; that the car was fifteen feet from him when he fell; that a distance of thirty-five feet was required to stop the car; that he made every effort to stop the car when deceased fell, but was unable to stop it before it reached and struck deceased; that it stopped within four feet of the point where it struck deceased.

The testimony of other witnesses tended to show that deceased was half way across the bridge when the car reached the east end of the bridge; that other boys who had gone out with deceased, and were then crossing on the wagon bridge, called to him, and that he began to run; that he made two ties at a time, jumping; that he ran ahead of the car until he was within a few feet of the west end of the bridge, and then fell on the track and was struck by the car.

The cause was submitted to the jury on the fourth count of the declaration, and defendant's plea of not guilty. That count averred that while deceased was crossing said bridge with all due care, etc., "the defendant then and there, by its servants, carelessly, negligently, improperly, wrongfully and wantonly ran, drove and propelled its said motor or electric car, without exercising reasonable care to control the management thereof; that by and through the wrongful and improper management, and careless and wanton conduct of the defendant by its servants in that behalf," the car ran against the deceased, etc. We think that this count, after verdict, must be held to sufficiently allege wantonness on the part of the defendant.

As to the evidentiary facts, there is no dispute as to facts that we regard as material or controlling.

Deceased, in going upon the bridge, was a trespasser on the private property of the defendant, to

whom the defendant owed no duty except not to wilfully or wantonly injure him. Deceased was about half way across the bridge when the car reached the east end of the bridge, and the motorman then saw him. At the same instant deceased was informed by his companions, who were on the wagon bridge, of the approach of the car, and began to run west, no doubt intending to leave the track at the west end of the bridge. There is some dispute as to the rate of speed of the car, but it is clear that it was nearly double the rate of speed of deceased as he ran over the ties. He was in the middle of the bridge, and therefore seventy feet ahead of the car when the car reached the east end of the bridge; he was within a few feet of the west end of the bridge when he fell, and therefore had run a little less than seventy feet, and the car had run a little less than 140 feet, from the time the car reached the east end of the bridge and the deceased started to run from the middle of the bridge. The motorman knew that he could not stop his car within less than thirty-five feet, and yet ran it so rapidly that it was only fifteen feet behind deceased, according to his testimony, or still nearer to deceased according to the testimony of other witnesses, when deceased fell. Deceased could not, while on the bridge, get out of the way of the car by stepping to either side of the track, but could only avoid the car by keeping ahead of it until he reached the west end of the bridge and then stepping to one side. He was running over cross ties placed ten inches apart on a structure twenty-five feet above the river, and the motor man, with full knowledge of all the facts and circumstances, ran his car so rapidly, so close behind the deceased that if he fell on the track the car could not be stopped before it reached him. We think that the question whether the motorman ought reasonably to have anticipated the danger that deceased might, under such circumstances, stumble and fall on the track, was a question for the jury. We also think that it was a question for the jury, under all the circumstances

in evidence, whether defendant's motor man was guilty of such negligence as amounted to and was wantonness. If he was, the defendant was liable although the deceased was a trespasser in going upon the bridge. Chicago Ter. R. R. Co. v. Gruss, 200 Ill. 195; Chicago Ter. R. R. Co. v. Kotoski, 199 *id.* 383; Martin v. C. & N. W. Ry. Co., 194 *id.* 138, and cases there cited.

In our opinion the trial court did not err in denying defendant's motion for a new trial on the ground that the verdict is not supported by the evidence, or is against the law and the evidence.

The only other error assigned is the ruling of the court in permitting a witness for the plaintiff to answer the question, over the objection of defendant: "Was there any place for Walter (the deceased) to have gotten off that bridge other than at the end, the west end"? The witness answered, "that there was not". We do not think the question called for the opinion of the witness, but for a fact. But however this may be, in view of the other evidence in the case the answer was not harmful to the defendant.

Finding no reversible error in the record, the judgment of the Circuit Court will be affirmed.

*Affirmed.*